### 14425. MONTGOMERY *v.* BERRY.

The parties being at issue as to the right to increase the storage charges on the defendant's cotton to the rate for which the warehouseman was suing, and the evidence being in conflict as to what was the contract in regard to the rate, the court erred in directing a verdict against the defendant for the amount sued for.

DECIDED FEBRUARY 28, 1924.

Complaint; from Floyd superior court—Judge Wright. January 24, 1923.

*Porter & Mebane,* for plaintiff in error.
*Paul H. Doyal,* contra.

JENKINS, P. J. 1. "A contract with a warehouseman may contain an express provision as to the charges and expenses which the bailor is to pay, in which case the contract will govern as to the amount, the items, and the time of payment. In the absence of a special contract, where goods are received by a warehouseman for storage in the usual course of business, there is an implied contract on the part of the bailor to pay the customary charges for storage and expenses, or such reasonable charges as warehousemen of like capacity and facility are entitled to. . . Where the depositor knows the charges of the warehouseman, he cannot refuse to pay on the ground that they are unreasonable." 40 Cyc. 450, 451; *Dixon* v. *Central Ry. Co.,* 110 *Ga.* 173, 185 (35 S. E. 369).

2. In this suit for storage charges the plaintiff warehouseman testified that there was no express agreement as to the price of storage at the time when the cotton was stored, nor any understanding as to the price of storage remaining the same until delivery of

the cotton. There was no evidence as to any custom among warehousemen not to increase the charges on cotton already stored, such as was offered in *Garmany* v. *Rust, 35 Ga.* 109, 110, 113, and in *Bush* v. *Cowart, 30 Ga. App.* 138 (117 S. E. 104), which latter case is now pending in the Supreme Court on certiorari. The plaintiff therefore contends that after having given to the defendant customer written notice that he would increase the storage rates to the amounts claimed, he was legally entitled to make such a proper increase. The defendant and his employee, however, both testified in effect that at the time of placing the cotton in storage there was an express written contract made with the plaintiff as to the exact storage price a bale per month, that this agreed charge "was to remain in force until the cotton was delivered," and that the amount thus due was "to be paid when we presented the receipts and called for the cotton." Under the plaintiff's evidence, he had the right to make the increase as claimed, which he testified was proper and customary, after notice to the defendant, regardless of whether or not the subsequent conversation between the plaintiff and defendant could or could not be taken as showing an implied consent by the defendant to such increase; and under this view of the evidence, the defendant, having permitted his cotton to remain in the warehouse after the plaintiff had requested him to remove it if the increase was not satisfactory, would be liable for the amount claimed. However, under the evidence of the defendant as to an express contract covering the storage price until called for by him, the plaintiff had no right to increase such agreed charges on the cotton thus placed until it was called for or delivered, in the absence of some new express or implied contract between the parties with reference thereto. The evidence for the defendant showed that he expressly protested against the increase, by reminding the warehouseman of his previous alleged contract, at the same time that the plaintiff warehouseman told him to remove the cotton if the increase was not satisfactory. Had the jury accepted the evidence for the defendant, a verdict in his favor would have been authorized. The evidence as to the main point in issue,—that is as to what the contract of storage actually was,—being thus in conflict, it was error to direct a verdict for the plaintiff.

*Judgment reversed. Stephens and Bell, JJ., concur.*